[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for the dissolution of a marriage. The parties married on April 18, 1998, in Charleston, Rhode Island. They have resided continuously in this state for at least twelve months before the date of filing the complaint; therefore, the court has jurisdiction. There are no minor children who are issue of this marriage.
 I. STATEMENT OF CASE
The plaintiff husband, Daniel Wood, is a forty-seven year old engineer with the Dictaphone Corporation in Stratford, Connecticut. The present is his second marriage. The defendant wife, Rebecca Chase Wood, is forty-eight years old. She is currently employed as a fourth grade math teacher at the Curiale School in Bridgeport, Connecticut. This is the defendant's third marriage.
Currently both parties are in generally good health. Both have children from prior marriages. Each has completed post-secondary education. During the marriage, the defendant finished nearly all courses required for her master's degree in education.
Both the plaintiff and the defendant brought personal property into this marriage. Additionally, the plaintiff had some savings and a pre-existing pension. Both parties contributed to the marital income. The plaintiff worked as an engineer. The defendant earned sporadic income as a substitute teacher. Additionally, she collected rental income.[1]
Before her current marriage, the defendant inherited an interest in several parcels of real estate including property located at 901-909 Main Street in Monroe, Connecticut. For several years, the executors of that estate unsuccessfully attempted to sell the property. The defendant, who had a third interest in the Main Street property, wanted the land to remain in her family. Although the defendant had a one-third interest in the Main Street property, she needed the plaintiff's financial assistance in order to secure a mortgage. The plaintiff was reluctant but he eventually acquiesced in the purchase of the property.
The defendant contributed her share of the estate, $75,000, toward the purchase price of the Main Street property. The plaintiff provided cash for a down payment, payments toward tax liens and money to satisfy obligations owed by the defendant to her former husband.[2]
CT Page 7971
Once the parties purchased the Main Street property, the plaintiff spent a significant amount of time improving the house located thereon. The defendant owned several parcels of adjoining land, some of which generated rental income. The plaintiff assisted the defendant in the improvement of those parcels, supplying, for example, the labor required for painting, wall papering, porch extensions and electrical work.
While the defendant owned several parcels of property, some rent producing, she came into this marriage with significant premarital debt.[3] In January 1999, shortly after the parties purchased the Main Street properties, the litigants applied for a home equity loan with which they consolidated their existing joint and individual credit card debt. Unfortunately, during the next two years the defendant continued to accumulate debt. Her most significant credit card charges during this short marriage were her college tuition payments and the cost of two new computers.[4] Although the defendant also purchased some items for the plaintiff, he did not receive the benefit of the bulk of her spending.
Throughout the marriage, the defendant used marital assets in order to preserve her separate property. For example, she used the 2000 joint tax returns to pay real estate taxes on her private property. That practice continued after the parties' separation.
The parties separated in August, 2000. At the time, the defendant remained in the marital home with her two children. The plaintiff moved into a spare bedroom at his sister's house. The defendant agreed that she would pay the mortgage on the Main Street property. The plaintiff agreed to pay the home equity loan, joint credit card bills, car insurance and medical insurance for the defendant and her children. Although the plaintiff has fulfilled his portion of this obligation, the defendant has failed to make the necessary mortgage payments.
At trial, the defendant complained that she did not have sufficient funds for the mortgage payment. Contrary to this assertion, it is clear that the defendant used all available assets to preserve and improve her rental property. Additionally, she purchased a $30,000 car. She did not, however, pay the mortgage on the marital residence.
The defendant suggests that her maintenance of the marital home drained significant assets. This contention is disingenuous. The defendant's most significant expenses during the parties' separation include college tuition, real estate taxes for the defendant's separate property, a tax lien from the State of Connecticut that arose from her inheritance and attorney's fees. Although the defendant lost some of her rental income, CT Page 7972 there is no reason why she could not find new tenants for any of her properties.
The debts in this marriage are a significant problem. Unfortunately, this marriage had other difficulties. These individuals had stopped communicating. Although they attempted marital counseling, they were unsuccessful. Simply stated, the plaintiff wished to spend time with his daughter from a prior marriage. The defendant preferred that the plaintiff establish a bond with his step children. The children became a source of contention. Additionally, the plaintiff wished to participate in softball leagues without the defendant. She resented the exclusion from this circle of individuals.
The reasons for a marital breakdown of this two-year marriage are simple. The parties had substantially different beliefs concerning financial management. Furthermore, the defendant preferred to preserve her assets to the detriment of the martial property. Additionally, the defendant wished to monopolize much of the plaintiff's time, ignoring the fact that her demands resulted in the exclusion of the plaintiff's young daughter and his individual friends. Although both parties share responsibility for this marital breakdown, the primary fault lies with the defendant.
 II. ORDERS
The court has considered all the facts found in this memorandum of decision in light of the mandate of Connecticut General Statutes section46b-81. See Smith v. Smith, 185 Conn. 491, 493, 441 A.2d 140 (1981).[5]
The court, having considered all the evidence in light of all relevant statutory criteria, enters the following orders:
1. The marriage of the parties is dissolved on the grounds of an irretrievable breakdown.
2. Neither party shall be responsible for alimony to the other party.
3. The parties shall sell the property located at 901 — 909 Main Street in Monroe, Connecticut.
a. The property shall be listed for sale on or before July 15, 2002.
 b. If the parties are unable to agree on a listing price, the price shall be set by averaging the suggested listing price of separate appraisers selected by the parties.
c. Any offer within ten (10%) percent of the listing price shall be CT Page 7973 accepted.
 d. Upon the sale and after payment of the mortgage, broker's fee, attorney's fee and any other usual and customary closing expenses, the net proceeds shall first be utilized to pay the following debts listed on the plaintiff's financial affidavits: the First USA Bank, the Discover card and the joint American Express card.
 e. After the aforementioned debts have been satisfied, any remaining proceeds shall be divided evenly between the litigants.
 f. The thermal spa shall be sold and the proceeds divided evenly between the litigants.
 g. Each party shall be responsible for any taxable gain in said proportion.
4. The court shall continue to reserve jurisdiction over matters relating to the listing and sale of the property.
5. Neither party shall cause or allow the property to be further encumbered without the consent of the other party.
6. The defendant is awarded all of the furniture and furnishings in the marital home, with the exception of the items listed in schedule A, attached. Those latter items are awarded to the plaintiff.
7. The plaintiff's interest in any retirement plan with his current employer shall remain his free of any claims by the defendant. The defendant shall execute any document necessary to terminate any rights she may have in the plan as may be requested by the plaintiff.
8. The defendant's interest in a retirement plan with her current employer shall remain hers free of any claims by the plaintiff. The plaintiff shall execute any document necessary to terminate any rights he may have in the plan as may be requested by the defendant.
9. Each party shall pay his or her own attorney's fees.
10. Except to the extent more specifically set forth herein, each order of the court is to be effectuated within thirty (30) days of the date of this decision.
11. Except to the extent more specifically set forth herein, each party shall retain all assets as shown on their respective financial affidavits free and clear of any claim or demand by the other, and each CT Page 7974 party shall be responsible for all liabilities as shown on their financial affidavits and shall indemnify and hold harmless the other party from liability therefore.
Judgment shall enter in accordance with the foregoing orders.
 ___________________ DEWEY, J.
 SCHEDULE A Daniel Wood Personal Property Before Marriage
Personal belongings stored in the barn loft at 895 Main Street Monroe.
Books Miscellaneous equipment electronics, etc. Clothes Plates and cups Food utensils End table Lamps Tools Daughters games, toys etc Ice chest
Also in the barn on the main floor all belongings left there for storage because of no available space at 901 Main Street home.
King size mattress, box springs and frame Double Lazy boy recliner Single Lazy boy recliner Tools Daughters single mattress, box spring, frame/headboard. Bedroom furniture, end tables, dresser, bureau Lamps Miscellaneous items packed in numerous boxes on the main barn floor.
At 902. Main Street.
Roll top desk and chair King size mattress, box springs and frame 3 King size quilts Clothes 27" Toshiba Color television w/remote CT Page 7975
 SCHEDULE A Page 2
Refrigerator Kitchen Table and 5 chairs Sleeper sofa Yamaha receiver model RUX59O Pentax IQ Zoom 80-E 35MM Camera 5HP Briggs and Stratton Leaf blower 2 Catholic crosses NordicTrack and exercise bike Tools in garage, basement and shed
For my daughter: Bedroom desk lamp Disney alarm clock Disney cookie jar